Case number 23-1624, Lamont Heard v. Yarnice Strange et al., oral argument, 15 minutes per side. Mr. Z for the appellate. Mr. Z, you may proceed. Good afternoon, your honors. You may please the court. I'd like to save five minutes of time for rebuttal. Great. Section 1988A directs federal courts to apply state limitations periods and tolling rules to Section 1983 claims unless those rules are inconsistent with the Constitution and laws of the United States. Because federal law says nothing about limitations periods and tolling rules for Section 1983 claims, the Supreme Court has repeatedly explained that in most cases, state limitations periods and tolling rules are binding rules of law. The district court nevertheless declined to apply Michigan's tolling rule on the theory that the tolling rule is inconsistent with the Prison Litigation Reform Act, even though the defendants never even made that argument in front of the magistrate judge. Can I ask you, I recognize they didn't make it, but ultimately that's what the district court did, and they're relying on that, as you well know from your briefing here on appeal. Can I ask you, when we're trying to determine consistency and or inconsistency, what should we look at? Text? Precedent? You know, 1983 precedent? History? Like, what are your thoughts? How should we make that determination? So I think first and foremost, you look at the text and what the word inconsistent means. Now, obviously, you're also constrained by precedent, including cases like Tomaino and Hardin and Robertson, which, you know, they don't actually interpret the word inconsistent. You know, they put the text in the footnote and then talk about, you know, like, whether it's consistent with statutes purposes and all that. But I think, you know, if you were to look at it from the first instance, you would want to look at what inconsistent means, just the ordinary understanding of the word inconsistent. And I think the best interpretation of that word is whether it's incompatible with some federal law requirement. And so I think if you read cases like Moore versus Almeida and the other cases that have actually found inconsistency, they typically involve situations in which the state law requires you to do something that federal law forbids, or it's a situation where it excuses you from doing something that federal law requires. And in those circumstances, that's when the state happens to be inconsistent with federal law. But I think what about the 1983 cases that say you can look to policies? I mean, that's really what the state wants us to do. They want us to look at the policies underlying the PLRA and use that. And as you know, because of the back and forth in the briefing, that exhaustion would frustrate the policies because of essentially vexatious litigation. So I don't think that's right. I mean, I do think, you know, cases like Tomaino, they talk about the policies of the underlying federal statute. But I think the problem with the state's argument is that it ignores the very basic statutory interpretation principle that no legislation pursues its purposes at all costs. And as cases like Jones, Porter, and Woodford make clear, Congress didn't enact the PLRA with a single-minded focus on reducing the number of prisoner suits, no matter the cost. Rather, the PLRA strikes a balance between weeding out frivolous lawsuits while ensuring that meritorious ones get heard on the merits. And the state's argument ignores the latter interest altogether. I think just bringing this back to the text of Section 1988, the text says it directs courts to apply state tolling rules unless those rules are inconsistent with, quote, the Constitution and laws, plural, of the United States. And so that's just another indication that you're not supposed to look at Prison Litigation Reform Act and one of its purposes in splendid isolation. You have to look at whether the state rule is consistent with the overall balance struck by Congress between limiting frivolous prisoner suits and vindicating core constitutional rights under Section 1983. And you can't just focus on the former law and ignore the latter altogether, but that's exactly what the state asks you to do. And I'll just point out that in a variety of different contexts throughout the U.S. Code, when Congress wants to focus on a particular statutory provision, it says that. So it often says, it often has various preemption provisions that say a state rule is preempted if it's inconsistent with, you know, take the ERISA or the Endangered Species Act or whatnot. But that's not what Section 1988 says. It says the Constitution and laws of the United States. So I think that just confirms that you're not supposed to look at just the PLRA and one of its purposes in isolation. And the reason why the defendants don't really want to talk about, you know, the latter interest is because under their reasoning, I think they don't dispute this, is that a lot of meritorious lawsuits will never be heard on merits because the plaintiff who files a lawsuit based on an honest but mistaken belief that he properly exhausts his claim only to realize months or years down the line in the course of litigation that he failed to satisfy some procedural rule. And by that time, the statute of limitations. I get the sympathies, and I don't disagree with you, but I guess why isn't Lamont Heard different? As you point out yourself in his brief, I mean, he's a pretty experienced litigator, someone who knows the rules, should have exhausted, as you point out, went to exhaust, I guess. They didn't respond. But the rules say then you have to do certain things, I can't remember the exact specifics, but something within 10 days or something like that. So why isn't, I mean, why isn't he different in that regard? So I don't think like even the state says that this case is an example of vexatious litigation. It's not the case where, you know, he didn't even try to exhaust, right? Like he tried to exhaust, and it turns out there was precedent even in the Eastern District of Michigan that says if you try to exhaust and the state just doesn't respond, then you properly exhaust, and then you can file your lawsuit in federal court. And the district court recognized that in this case. The district court just happened to disagree with, you know, her colleague on the Eastern District of Michigan. But I think that illustrates that this isn't exactly the type of case that, you know, is the sort of vexatious situation that the state is worried about. How did he try to exhaust? I'm sorry, can you say that again? How did he try to exhaust? He filed a grievance with the Michigan Department of Corrections. So he filed a level one grievance, and the prison just never responded. He never got a response at all. And so he thought, well, you know, then it makes sense for me to file a district court. And I think like this set of facts just illustrates why Michigan has this tolling rule, right? It's to address situations like this, where, you know, you honestly go mistakenly think like you properly exhausted, it just happens to turn out that you missed some sort of procedural step. And it's sort of unfair to say, well, you know, the statute of limitations is expired while the claim is pending in federal court. And so, you know, I think just even separate from all that, even if, you know, you want to focus on, as the state insists, the PLRA's overarching goal of decreasing the number of prisoner suits, that argument still doesn't really work, right? Their whole argument is that some prisoners may take advantage of the tolling rule by repeatedly filing the same un-exhausted claims in order to harass prison officials and to harass the district courts. But one, the three strikes provision already takes care of that. As cases like Green v. Young and Feathers v. McFall say, if you've repeatedly filed the same un-exhausted claim, that's a strike against you. And when you get three strikes, you're prohibited from filing lawsuits in IFP. But even setting all that aside, I think cases like Robertson and cases like Hardin, they illustrate that, you know, you're not supposed, when assessing whether a state rule is inconsistent with federal law, you're not supposed to focus on, speculate about extreme examples or extreme applications of the rule and focus on some edge cases. You're supposed to focus on what happens in most cases. And I think 30, almost 30 years of experience with the PLRA and the fact that, you know, Michigan has had some version of this tolling rule since like 1860 and most states in the country share some version of the tolling rule, there hasn't been examples of vexatious litigation that the state is concerned with. In fact, I think cases like Alloway and Gashie and the Thaddeus X case in this court show that most prisoners who take advantage of the rule, they honestly but mistakenly think that they exhaust their claims. It's not some sort of, you know, situation where they're vexatiously trying to, you know, burden the federal courts with litigation. And so, you know, I think, I just don't think like the state's argument really works in that regard. And then, you know, the last thing I'll say is before my time expires is that I think it's useful to keep in mind that Congress enacted the Prison Litigation Reform Act alongside AEDPA, right? And unlike the Prison Litigation Reform Act, AEDPA includes not just an exhaustion requirement, but a one-year statute of limitations, and it also includes specific tolling rules. So the tolling rules there say, you know, the statute of limitations is told when a prisoner goes and exhausts his claims through state, through the state court system, but it doesn't tell the statute of limitation when a prisoner files an unexhausted claim. And so I think if Congress wanted to prohibit tolling in this circumstance, it could have done so. It could have just followed what it did in AEDPA. It didn't do so here. Instead, Section 1988 says you're supposed to look at state tolling rules and state limitations periods. And so I think the district court was just wrong to override that. Thank you, Mr. Z. Mr. Smith, you may proceed. Thank you, your honors. Good afternoon, and may it please the court. Assistant Attorney General Joshua Smith on behalf of defendants at police. And I, of course, am asking you to affirm the district court's decision finding that Section 600.5856 is inconsistent with the Prison Litigation Reform Act or PLRA. I think the timeline based on some of the questions and some of the responses is important in this case, your honor. Specifically, the district court dismissed the claimant issue here in July of 2019. And Mr. Hurd essentially sat on his rights for about 10 months. He didn't file or start pursue the grievance process. You all bring this up in your brief, and I think Mr. Z responded to it. But you agree if he exhausted and it was tolled, then it suits timely, right? Correct. That is correct. I mean, why does it matter whether he sat on it for two months or 10 months? Well, I think it matters because one of the things that you alluded to this one of your questions, Judge Zappar, one of the issues here is we have to examine based on the district court's ruling whether Section 5856 is inconsistent with the Prison Litigation Reform Act. And both Tammanio and Robertson have said that when you're examining that nexus of whether a state statute is inconsistent with the federal statute, you have to look to the policies underlying the PLRA. Yeah, but where do we I mean, where do we get those? That's a dangerous business going into and guessing what the policies are underlying. And I mean, we know what the Supreme Court has told us. The last time courts did this involving the PLRA was Jones v. Bach, and that didn't turn out well for lower courts. And so it seems to me if it's not inconsistent, I mean, we've permitted tolling laws in all sorts of situations under the PLRA. I mean, why would we all of a sudden change? You know, I get Crump said one thing, but there's plenty of district courts going the other way. And the circuit in a lot of instances has just assumed it because no one's really litigated. A couple of responses to that, Your Honor. There's a lot to respond to. There are essentially three cases that have dealt with this issue head on. There have been a variety of cases from the Eastern District of Michigan, and I believe this court, like ASX, which I believe both Judge Gilman and Judge McKeague were on, that did apply Section 5856. Crump is the only one that I know of in this district that examined the conflict or potential for conflict between 5856 and the PLRA. And we have two out-of-district cases as well. We have Alloway, which is from a federal court in New York, and Gashie, which is also from a federal court in New York. I think Gashie is easily distinguished because Mr. Gashie in that case had actually been released by the time he filed suit. And it's pretty well established that the PLRA applies to not apply to a person who is no longer incarcerated. In Alloway, the court found that tolling was appropriate, that some sort of equitable remedy, to be specific, was appropriate, and the unique circumstances of that case. There were two unique circumstances that the court offered. Let me ask you, because I understand those cases, a question I asked Mr. Z, which is, what should we look to when we're determining whether it's inconsistent? It seems to me the text is where we often start, and it's hard to say that the tolling rules are inconsistent with the text. So, what should we look at? Fair enough. I mean, I think that you have to look at the text. I mean, when we're talking about a statute, the text has to be the touchstone, obviously. But the second place to look is to, how's the Supreme Court interpreted that text? And we have several different cases. Obviously, Jones v. Bach, which you just alluded to. And when we look at Jones, and we look at Porter, and then we look at Woodford, those are sort of the big three, if you will. They all establish that the PLRA serves a lot of policy goals, and that exhaustion is a key component of that. So, according to Porter— But you agree that tolling—I'm sorry to interrupt you—you agree that tolling doesn't change the exhaustion requirement. Tolling just supports the exhaustion requirement. It can. And I think that takes us back to, let's look in—this is a question you asked earlier that I don't think I answered. But you asked about, specifically, doesn't this circuit already apply tolling? And the answer is, yeah, it does. Brown and Searles and a host of other cases have specifically held that there's equitable tolling. That is, the period during which a prisoner, like Mr. Hurd, is actively exhausting his or her administrative grievances, during that period, the statute of limitations tolls. Yeah, but Michigan gives something more liberal than that. Michigan gives something much more expansive. And I think that's the reason why 5856 is inconsistent. And this is one of the— I mean, it's ironic, right? Here's Michigan asking us not to apply their own law. It seems to me if Michigan was problematic, you could change it. Yeah, well, I have no power to do that. Neither does my client, Your Honor. But point taken. One of the things that Crump pointed out—and I do want to point out, by the way, that there are two paragraphs of my brief where I refer to Crump decision as this court. That is obviously a mistake, and I apologize for it because it's very confusing when you're reading my brief. So please accept my apologies. That's fine. Mr. G pointed that out in his reply, too, so. He certainly did. And he was very kind to me in pointing that out rather than saying what a lunkhead, which would be deserved. But Michigan's tolling statute is indefinite. And that's where I think the clash is with the PLRA. If you look at the equitable tolling that—as far as I know, every circuit that's considered the issue applies some form of equitable tolling to the PLRA. That makes sense. That is, if we look at Mr. Hurd's case, Mr. Hurd sat on his rights for 10 months. Then after he'd exhausted, he sat on his rights for six more months. But under Brown, the period during which he was actively exhausting, about a 66-day period in 2020, the limitations period would have been full. Now, in this case, it wouldn't save Mr. Hurd's claim specifically. And I do have to point out the district court also noted that he never raised that issue earlier. But it is fair to say, though, that if— Yeah, but Mr. G's right, too. You didn't raise any of this in the match. We didn't. No. And— It's a little hard to fault him when we're not faulting you. It's hard to fault him for that. But I think the broader point, though, is even if he had done that, and I suspect if he had done that before, it probably would have applied Brown, but I don't know that. Even if he had done that, it still wouldn't have been sufficient to toll the period to make his claim live. Can I skip to the other point, which is, at the end of this, your point seems to be, if we allow Michigan's tolling law to operate, it would be inconsistent with the PLRA limiting litigation in some sense. And there would be vexatious and abusive litigation. But what evidence is there of vexatious and abusive litigation where I don't see a benefit to a prisoner filing a lawsuit, then going and exhausting, then coming back. And if they're doing that, and it's obvious, as I think Mr. Zink pointed out, you could use the three strikes rule. You could. There's a few responses to that, Your Honor. First of all, the three strikes provision isn't exclusive. And what I mean by that is the PLRA has a number of measures to limit prisoner lawsuits. And that is one of the express policy goals of the PLRA. The three strikes provision is one of them, and it's an important one. But the exhaustion requirement goes a little further. If a prisoner does not exhaust, his or her claim cannot be brought in federal court, period, under the three strikes provision. And there are limits on that. It has to be frivolous. It has to be malicious. And there's a few other things. No, but my point only is if they know it's unexhausted and they file nonetheless, then it's frivolous. And if they have experience and they know they have to exhaust and they don't do it, a district court could easily find it frivolous under the three strikes rule. Of course, exhaustion is another principle that if they don't exhaust, you can dismiss. But I mean, that happens all the time. So I mean, obviously, but the tolling seems to operate differently. It says if you forget to exhaust, we'll toll it while you go do it. Right. That's the thing. I think every circuit already applies a form of tolling that's specifically targeted for actively trying to exhaust. But we get that from the states, and Michigan supplies your version. Well, again, if we're looking at the tolling provision in Michigan, and again, the tolling provision in Michigan, because it's indefinite, that's why it conflicts. And if you look at Crump and you look at the district court decision below, particularly the report and recommendation from Magistrate Judge Morris, it delineates all of the problems with that. A prisoner could easily bring claim after claim. And you're right. Maybe a district court could find that it's frivolous. But based on my experience, that's not very common for district courts to determine that a claim is frivolous. And there are exceptions to the three strikes provision, for instance, if a prisoner alleges that he or she has an imminent risk of harm, for example. So the other thing, too, is the three strikes provision is limited in the sense that it doesn't prevent the suit in the way exhaustion requirement does. All it does is it prevents the prisoner from participating in the inform of appearance program. That is, the prisoner would have to pay the filing fee up front rather than have it periodically deducted from his or her prisoner account. So I don't want to say it's a weak tool, but it's one tool within the toolbox that Congress provided in the Prison Litigation Reform Act. And Michigan statute is very much indefinite. And I think Judge Bell in the Crump decision delineated the very good reasons why that's problematic. And Magistrate Judge Morris echoed those in the report and recommendation. The problem with it is a prisoner could bring a claim years later. Now, in the ordinary case, this is discussed a lot in the 1983 cases, Robertson and a few other ones and so forth. Typically, a plaintiff has a strong incentive to bring a claim as quickly as possible. That is, they want to be compensated and they know that memories fade and it could be a disadvantage if they don't. Prisoner litigation is very different. And if it weren't different, Congress never would have enacted the Prison Litigation Reform Act. Many prisoners are serving very long sentences, oftentimes life sentences. They have time that the prison system and the employees don't have. It's not that hard to envision a claim brought years and years later where a prisoner just sat on rights, whether it's in good faith or bad faith. Under 5856, that's going to toll indefinitely. But under this court's precedent in Brown, Searles, and many other cases, it would only toll for the period that that prisoner's actively attempting to exhaust his or her administrative remedies. And as far as I know, I don't know if any state has challenged this circuit's or other circuits' application of equitable tolling. And I think one of the reasons for that is it's a very sensible rule. It's going to determine, is this prisoner trying to actively exhaust or not? Now, going to Mr. Z's point about meritorious claims, any limitations period, any exhaustion requirement, by their very nature, there will be some meritorious claims that fall outside of a limitations period or where, for various reasons, a prisoner does not exhaust specifically in the context. But that in itself isn't a reason to apply a very open-ended, indefinite tolling provision that conflicts with congressional goals behind the PLRA. Those goals have been enunciated by the U.S. Supreme Court in several cases. If we accept your invitation to get into this analysis, and then we're trying to figure out whether the actions of the prisoner here has really caused or, with others, may cause the problems that you're pointing out, I'm trying to figure out, given that we have only one district court opinion, apparently, in our circuit, do you have examples of where this has been a problem or stated a different way? I'm just curious, why did you decide to assert this issue for this particular prisoner in this case? I can answer the second part of your question first, Judge McKeague, but I'm going to echo what Mr. Z said. The district court magistrate judge actually latched onto the crump issue. That's not actually an issue that my counsel in the court below argued. Getting to your first point, I see my time's expired. Would it be okay if I finish answering your question? Yes, absolutely. Thank you. I think it's fair to say when we have, effectively, if you include the present case, two cases that have discussed this issue, and we have two cases out of New York, that this is not an issue that pops up very often. I have to concede that. If it were an issue that popped up with relative frequency, we would see a lot more cases on it. But I do think that this court's jurisprudence on equitable tolling solves the problem consistently with the PLRA in a way that Michigan's indefinite tolling under 5856 does not. It's trying to figure out whether you're a solution looking for a problem. The problem doesn't exist. If you had some examples where prisoners had come back five years later, 10 years later, we'd say, okay, we understand that. You can make an argument that he waited too long on a couple of occasions in this case. But this doesn't even seem to be a particularly good factual example for your purposes here. Understood. It is not an issue that pops up very frequently. At the same time, the PLRA's goals are for these cases to expeditiously work through the court system. And part of that, and I can't remember if I think it's Woodford, but it could have been one of the other key cases. Part of that is that grievances should be filed as close as possible to the incident giving rise to the grievance. And I understand that factually, this might not be the best vehicle. Unfortunately, it's the vehicle available. Sometimes, to put it in another way, Your Honor, sometimes the vehicle you have available is a 10-year-old Chevy and you make do with it. But it's certainly not a problem that arises often. That still doesn't mean, though, that 5856 is not inconsistent with the PLRA. And it still doesn't mean that this court's jurisprudence on equitable tolling solves whatever problems exist with this because it encourages, as per Woodford, Porter, and other cases, it encourages prisoners to not only make use of the grievance process, but to make expeditious use of the grievance process. And if they don't, they're going to lose their claims. And I think that's very important in terms of not just the court system in looking at the heavy prisoner litigation load, but also looking at systems of correction. Any other questions? Judge McKeague, if you are in Lansing, I hope you've been staying warm. Thank you. I am in Lansing, and I am warm. Thank you. But thank you for that. Thank you, Mr. Smith. Mr. Zee? Thank you, Your Honor. Just a few points from rebuttal. So, first, I don't take my friend to be arguing that the tolling rule is inconsistent with the exhaustion requirement. I think it applies to the tolling rule. Prisoners still have to go back through the prison grievance system and exhaust their claims. I think his only argument is the tolling rule is inconsistent with the prison litigation reform act because some prisoners are going to file vexatious, you know, repeated, unexhausted claims to harass prison officials. I hear two other arguments. I'm sorry to interrupt you. I hear one being, why not make it consistent with equitable tolling and just have the tolling be for the period when he's exhausting, which seems to protect the prisoner, but doesn't let them sit on their rights, so to speak. And then the second point, which relates to sitting on the right, is kind of like a latches defense, which is, you know, he had plenty of opportunity. He kind of sat on it. Why should the court care? I think those are all considerations that Congress could have taken into account deciding whether to impose its own tolling rules. But I think cases like Tomeno and Robertson and Hardin, they say, like Congress in section 1988, Congress left it to the states to balance the policies that proposed with the policies underlying, you know, having claims heard on the merits. And so, you know, while those are all certainly things that Congress could consider, Congress directed courts to look instead at state law. And here, state law provides for tolling when the prisoner files an unexhausted claim in a federal court. Second, I think, you know, again, going back to my friend's point about vexatious litigation, I mean, I think it's quite telling that he concedes that there aren't any examples that he can think of, or many examples that he can think of, of vexatious litigation. And I think the district court's only reasoning was that the tolling rule is inconsistent with the Prison Litigation Reform Act because, like, there could be potentially some prisoners that abuse the tolling rule. But I think his concession just, you know, underscores that that speculation was unwarranted. And, you know, third, I think, you know, his argument really proves too much if the question really is whether a tolling rule is inconsistent with the PLRA's goal of minimizing prisoner litigation. And I think every tolling rule would be inconsistent with that because every tolling rule has the effect of increasing the number of lawsuits that prisoners file in federal court. But obviously, cases like Hardin and Tomatoes say that that can't possibly be the right rule. My friend on the other side mentioned a couple of times that the tolling statute is indefinite, but I think the statute in Hardin was also indefinite. There, the tolling statute said, told the statute limitations for the entire period in which a prisoner was incarcerated. So theoretically, you could have the prisoner who was incarcerated for 50 years, wait 50 years to file the Section 1983 claims. Yet that wasn't inconsistent with federal law. Granted, of course, Hardin was a case decided before the PLRA, but it's not as if there was no federal policy of limiting frivolous prisoner suits before the PLRA. Congress had enacted a lot different provisions limiting the number of prisoner suits. Finally, just last point, it's also a little inconsistent for the state to insist on applying this Michigan statute limitations, but not its tolling statute. So it wants to take the part of state law that it likes, but then discard the part of state law that it doesn't like. And I think cases like, again, Tomeno, et cetera, say that you can't understand the state limitations period without also understanding the coordinate tolling laws. They go hand in glove together. And so, I don't think the state would be here arguing that a five-year or six-year limitations period would be inconsistent with the PLRA. And of course, if that had been Michigan's limitations period, I don't think there's an argument that my client's claims are untimely. So I just think the state's argument of trying to pick what it likes from state law and discard the part that it doesn't like, it's just inconsistent with that entire line of cases. Unless your honors have any further questions, we ask the court to reverse. Thank you. Any questions? Nothing here. I know you were appointed. I can't tell you how much we appreciate your appointment, and the court is grateful that you would take this on. Thank you, your honor. It was a lot of fun. Appreciate it. Thank you all. Thank you both very much for appearing and agreeing to appear via Zoom. We appreciate it. Have a great day.